C. FALCON, Appellee, v. W. C. FALCON, Appellee; LEA FAIRLEY, Appellant.

No. 39224.

JANUARY 8, 1929.

REHEARING DENIED APRIL 5, 1929.

*Ring & Hann,* for appellant.

*Charles J. Haas,* for C. Falcon, appellee.

FAVILLE, J.—W. C. Falcon executed the note in suit. Fairley was payee thereof. The note was transferred to plaintiff. The defense of Fairley is that the note was transferred by qualified indorsement, and that a material alteration was made in respect to said indorsement by the erasure of the words "without recourse."

It appears that one John Fairley, the father of defendant Lea Fairley, conducted the negotiations by which the note was sold and transferred to the plaintiff. John was acting solely as agent for defendant in making said sale and transfer. John made the indorsement on the note, by writing thereon the words, "Lea Fairley, without recourse." Lea was not present at the time of the transfer. With respect to said transaction, John testified that:

"At the time I handed the note to the plaintiff, we had a conversation with reference to the manner in which I had indorsed the note. Q. What was it? A. He looked at the note, and he says, after he meditated a little while, 'I wish you hadn't put that "without recourse" on it,' he says. I says: 'That was Lea's instructions,—that is the way we are selling it.' He says, 'I understand that,' but he says, 'Bill is president of the bank at Central City, and I intend to handle this note through the bank here, and it would look better if that "without recourse" hadn't

been on it. That is why I would rather it hadn't been on it.' He says, 'It is all right the way it is, but I guess I'll just rub that off,—it would look better.' Q. At or prior to this time, had he delivered to you the check in payment of the note? A. This was after he had given me the check. Q. State whether or not that check was in payment of the note plaintiff's Exhibit 1 solely, or in connection with another note? A. It was in connection with another note. * * * The conversation I had with the plaintiff was shortly after he had given me the check. For a short time prior thereto, the note plaintiff's Exhibit 1 was lying on his desk, while he was figuring out the interest and making out the check. I signed them, and laid them over on his desk. I indorsed this note, Exhibit 1, in the bank at Mount Vernon. * * * Q. Mr. Fairley, I wish you would look at plaintiff's Exhibit 1, and state whether or not, at the time you delivered that note to the plaintiff, there was any erasure on the back of the note. A. There was not. Q. Mr. Fairley, it now appears that something has been erased from the indorsement on the back of plaintiff's Exhibit 1, and immediately under the name 'Lea Fairley.' I'll ask you to state if you know what has been erased from the back of that note. A. I do. Q. What has been erased? A. 'Without recourse.' ''

On cross-examination, he testified:

"I offered the note for sale to Mr. Falcon, and he agreed to take it. He gave me his check for two notes drawn on the Citizens' State Bank at Mount Vernon, and I think it was a cashier's check. When Mr. Falcon was making the check, I was a little to one side, probably two or three feet back of him. He was sitting on a high stool at his desk. I was sitting down behind him. The notes were lying on his desk, and I indorsed these notes on his desk. I was standing up while I made the indorsement, and left them right there on his desk, and then sat down in a chair. At that time, Mr. Falcon was making his check and figuring up the interest. He had not completed his figuring when I sat down. I stood up at the desk by the side of Mr. Falcon, at the time of making the indorsement. I made the indorsement in lead pencil. The indorsement on this note was all written at the same time. I used the same pen or pencil for making the whole indorsement. I wrote 'Lea Fairley,' and I wrote 'without recourse' under it on

the back of the note, and I wrote 'without recourse' at the same time I wrote the words 'Lea Fairley,' and I did not write anything else on the back of the note. It was already understood that he was to take the notes. The note involved was to be taken for the amount of the principal and interest accrued to that date. He was figuring up the interest when I sat down, and I left the notes on his desk right beside him. He handed me the check, and then turned and picked up the note, and noticed the indorsement 'without recourse.' Q. He objected to that? A. Yes. Q. He said you would have to erase that? A. No, he did not. * * * Q. What did he say,—what were the words he used about this rubbing out? A. He says, 'I wish you didn't put that on, I guess I'll just rub it out.' That was after—Q. Now you sat right there,—did you say anything? A. I said nothing. Q. He didn't say nothing? A. No, sir. Q. And you didn't say nothing? A. No, sir. Q. Did he turn to his desk? A. He was facing his desk. Q. So his back would have been to you? A. Yes. Q. You think, then, he was making this erasure, do you? A. I couldn't say; I couldn't see. Q. You took the checks and went out? A. I had had the check and had it in my pocket long before that.''

I. The plaintiff challenges the sufficiency of each of the various assignments of error. The assignments of error refer generally to specific questions which, under proper divisions in the brief, are specifically set out, together with the objections and rulings. Taking the brief as a whole, the assignments which we shall consider are sufficiently specific.

II. Appellant complains of the ruling of the court in sustaining objections to questions propounded to defendant respecting a conversation with plaintiff regarding the purchase of certain notes. The evidence solicited does not appear to have been in any way material to the issues in the case, and the court did not err in excluding it.

III. Complaint is made of the sustaining of objections to questions tending to show that the note was not sold by defendant personally, but that it was sold by his father, as his agent. The matter sought to be elicited was fully covered by other testimony in the record, and there was no reversible error here.

IV. The record discloses the following examination of defendant on direct:

"Q. Mr. Fairley, I'll ask you whether or not you delivered the note plaintiff's Exhibit 1 to your father, John Fairley, with instructions to him to sell the note to plaintiff and indorse the note without recourse. (Objected to as incompetent, irrelevant, and immaterial, foreign to any issue, and because it is expressly admitted in the answer that the defendant sold this note to the plaintiff, and it is immaterial whether he sold it in person or by agent, and for the further reason that it calls for hearsay testimony. Sustained. Defendant excepts.)

"Q. I'll ask you, Mr. Fairley, whether or not, as a matter of fact, you authorized your father to get the note,—as your agent,—to get the note plaintiff's Exhibit 1, and take it to Mount Vernon and sell it to the plaintiff, and indorse it 'without recourse,' and sign your name on the back without recourse. (The same objection as last above, and calling for the mere opinion and conclusion on the part of the witness, and as hearsay. Sustained. Defendant excepts.)

"Mr. Hann: The defendant Lea Fairley, to avoid asking numerous questions, now offers to prove by his witness—

"Mr. Haas: We object to the statements of any reference to the proof in the presence of the jury.

"The Court: Sustained. Ask your question, and I'll rule on the objections. * * *

"I directed my father, as my agent and representative, to go to the bank and get this note and take it to Mount Vernon for the purpose of selling it to the plaintiff. Q. And at that time, did you direct your father orally the method or kind of indorsement he should make, provided he sold the note to the plaintiff, C. Falcon? (Objected to as incompetent, irrelevant, and immaterial, foreign to any issue, calling for the opinion and conclusion of the witness, and further as hearsay, and not binding upon the plaintiff. Sustained. Defendant excepts.) Q. Mr. Fairley, without stating what your instructions, if any, you gave to your father, as your agent and representative, did you, as a matter of fact, instruct your father as to the kind of indorsement he should make upon the note plaintiff's Exhibit 1, if he sold it to the plaintiff, C. Falcon? (The same objection as the last, and

further as a repetition. Sustained. Defendant excepts.) Q. Mr. Fairley, did you ever direct or authorize your father or give him authority to sign your name to the note defendant's Exhibit 1 without recourse? (The same objection as the last.) A. My father was acting as my agent in the sale of the note Exhibit 1 to the plaintiff, C. Falcon. Q. As your agent in that transaction, had you given your father specific instructions with reference to that agency? (The same objection as the last, and further, as calling for the opinion and conclusion on the part of the witness, and as calling for hearsay, and not binding on the plaintiff. Sustained. Defendant excepts.) Q. Mr. Fairley, state whether or not, prior to the time that your father got possession of the note plaintiff's Exhibit 1, and took it to Mount Vernon to sell it to the plaintiff, if he could, if you did not specifically instruct your father that he should sign the note without recourse. (The same objection as last above, and further as leading. Sustained. Defendant excepts.) Q. Mr. Fairley, did you ever give your father any written instructions as to his authority in the matter of the transfer of the note plaintiff's Exhibit 1? (The same objection as the last. Sustained. Defendant excepts.) Q. Mr. Fairley, will you state what, if anything, was said to your father by you with reference to his authority in regard to the selling of this note? (Objected to as incompetent, irrelevant, and immaterial, and as calling for hearsay, in no manner binding upon the plaintiff. Sustained. Defendant excepts.) Q. State whether or not your father was given specific instructions with reference to the selling of the note in controversy, Exhibit 1? (Objected to as incompetent, irrelevant, immaterial, foreign to any issue, and further, that it calls for the opinion and conclusion of the witness. If any instructions were given, they are not binding upon the plaintiff. Sustained. Defendant excepts.) Q. Mr. Fairley, I'll ask you to state if there was any conversation between you and your father with reference to his authority in the transfer of the plaintiff's Exhibit 1 to the plaintiff, C. Falcon? (The same objection. Sustained. Defendant excepts.)''

We think the court erred in the exclusion of this line of testimony, as to the authority given by defendant to his father. Some of the questions did call for the opinion or conclusion of

the witness, and we have set them out as indicating the extent of the offer of evidence in various forms. They disclose the purpose of the testimony, in lieu of the offer which the court denied defendant leave to make. It was apparent from the record that John was the agent of defendant Lea in the sale and transfer of said note. It was certainly proper to show the authority of the agent in the matter of the indorsement of the note. The agent transferred and indorsed the note "without recourse," and received a check in payment thereof. It is contended that, after this had been done, and the note in fact delivered to the plaintiff, the latter erased the words "without recourse." This was a material alteration. Section 9586, Code of 1927. Plaintiff contends that the alteration was made as a part of the same transaction, and with the consent of the defendant's agent, John, who sold this note. Under this situation, it certainly was competent and material to show the want of authority of the agent to acquiesce in the alteration, if one was made, or to transfer the note without a qualified indorsement. There is no claim of estoppel. We think the court erred in excluding this line of testimony, tending to show the authority of the agent with regard to the indorsement of the note.

In this connection, appellee suggests that the record does not disclose, by any offer, what the excluded evidence would have a tendency to show, and that we will not reverse merely to permit speculation as to the answer. We recognize fully the rule announced in *Reynolds & Heitsman v. Henry*, 193 Iowa 164, and cases therein cited. In the instant case, however, when the defendant's attorney sought to make profert of record, the plaintiff's counsel objected, and the court sustained the objection. This left the defendant in a situation where he was directed to proceed by asking questions, and where objections to his questions were sustained. The character of the evidence that was sought to be elicited was, we think, apparent from the record.

The rulings of the court on the foregoing and other somewhat similar interrogatories resulted in excluding from the record proper evidence as to the authority of defendant's agent in regard to the sale of the note in suit, which evidence was material to the matters in issue.

Other matters urged by appellant as errors are not likely to occur upon a retrial. The judgment is—*Reversed.*

ALBERT, C. J., and EVANS, STEVENS, KINDIG, and WAGNER, JJ., concur.